Eastern District of Kentucky
F I L E D
JUL 2 8 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-455-GWU

CHARLES B. FREDRICKS,                      PLAINTIFF,

VS.        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

Fredricks

reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Fredricks

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Fredricks

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

5

Fredricks

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

6

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Charles B. Fredricks, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative and discogenic disorders of the spine, anxiety, and depression. (Tr. 24). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Fredricks retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 28-31). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were limited to light level exertion, and also had the following non-exertional impairments. (Tr. 527). He: (1) needed to alternate sitting and standing at 15-30 minute intervals; (2) could occasionally bend, crouch, and crawl; and (3) had a "seriously limited but not precluded" ability to relate predictably in social situations and deal with work stresses. (Tr. 527-8). He would have at least a "limited but satisfactory" ability in all other areas of performance, occupational, and personal-social functioning. The VE responded that there were jobs that such a person could perform, and proceeded

7

to give the numbers in which they existed in the state and national economies. (Tr. 528-9).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Fredricks alleged disability due to a herniated disc (Tr. 75), and medical evidence reflects that, after objective testing showed a small herniated disc at the L5-S1 level (Tr. 187) and the plaintiff failed other treatment options (Tr. 191-2, 276-83), Dr. Jean-Maurice Page performed an L5-S1 excision and fusion with cage and screws in October, 2001 (Tr. 250). Prior to the surgery, Dr. Page had imposed restrictions of not standing more than half an hour, sitting for more than one hour without a 10 minute break, or lifting over 15 to 20 pounds. (Tr. 304-5). The ALJ rejected these restrictions, however, because there was evidence that the plaintiff's condition had improved after the surgery. Dr. Page indicated in February, 2002 that he would limit the plaintiff to 10 pounds or less weight lifting for the next six months (Tr. 313), but this still would have represented less than 12 months after the surgery.

The plaintiff was also found to have a varus deformity of the left knee, which required Dr. Page to perform an "open wedge osteotomy with autogenous bone graft" in May, 2002. (Tr. 302). By August, although x-rays showed that one and possibly two of the screws in the knee were backing out, Dr. Page noted that the

8

graft site appeared to be healing, and overall alignment was "immensely improved." (Tr. 328). No specific functional restrictions were given.

Mr. Fredricks continued to complain of severe back pain, and he was eventually evaluated in October 2002 by Dr. Michael Cassaro, a specialist in pain management. Dr. Cassaro's initial evaluation showed midline tenderness and no movement of the right sacroiliac joint, along with positive straight leg raising on the left and a purple discoloration of the skin on the left leg from the ankle down, with edema from the knee down. (Tr. 397-9). The left leg had decreased strength, and sensation was absent in the L5 and S1 nerve distributions. (Tr. 399). Mr. Fredricks was using a cane and had a "profound limp." (Id.). After a successful trial of "subarachnoid opiates," Dr. Cassaro implanted a continuous morphine pump in January, 2003. (Tr. 385). The plaintiff stated at the administrative hearing in September, 2003 that this device had improved his pain by 70 to 80 percent. (Tr. 523).

Dr. Bobby J. Kidd conducted a consultative physical examination of the plaintiff in May, 2003, and reviewed some previous records. (Tr. 406, 413-15). His examination showed the plaintiff had 1+ pedal edema of the left lower extremity, but no evidence of peripheral vascular insufficiency. (Tr. 408). Mr. Fredricks had a limp, but he appeared stable at station and did not require an ambulatory aid. (Tr. 407). The left knee had a healed scar, but a normal range of motion, and no tenderness, warmth, or swelling. (Tr. 409). The lumbar spine showed surgical scars, but there

9

Fredricks

was no spasm or tenderness. Straight leg raising was positive on the left at 45 degrees. Mr. Fredricks was able to stand on one leg at a time without difficulty, his hip range of motion was normal, sensation was normal, and he was able to walk on his heels and toes, perform tandem gait, and squat without difficulty. (Id.). Dr. Kidd concluded that Mr. Fredricks could perform heavy level exertion with occasional squatting, crawling, and climbing. (Tr. 411).

In August, 2003, Dr. Cassaro, the treating pain specialist, submitted a residual functional capacity assessment limiting the plaintiff to lifting 10 pounds occasionally, standing and walking zero hours, sitting four hours (no more than one-half hour without interruption), never performing any postural activities, and having limitations on reaching, pushing, pulling, and working around heights, moving machinery, and vibration. (Tr. 501-3). The reasons that he gave were the plaintiff's multilevel lumbar disc disease and radiculopathy, and his need to stand and walk with a cane or other assistive device. (Id.).

The ALJ rejected Dr. Page's first set of restrictions because they were issued before the plaintiff's back surgery, and there was evidence that his condition subsequently improved. She rejected Dr. Cassaro's restrictions as being contradicted by the plaintiff's own account of his daily activities. In June, 2003, the plaintiff told Dr. James Leisenring, a consultative psychological examiner, that his daily activities included eating breakfast, going for a walk, taking out garbage, cleaning his yard, mowing his lawn on a riding lawn mower, driving, and sometimes

10

visiting nearby relatives. (Tr. 422-3). He would also attend church by himself, but was no longer able to fish or hunt. (Tr. 423). The ALJ also noted that Mr. Fredricks reported to Dr. Cassaro in May, 2003 that the morphine pump had helped increase his level of activities and that he was walking 1 to 1 and ½ miles a day, seven days a week, and also playing basketball and golf. (Tr. 454). The ALJ did not, therefore, give Dr. Cassaro's restrictions controlling weight, although she limited the plaintiff to a much greater degree than found by Dr. Kidd, the consultative examiner.

While the plaintiff objects to the rejection of Dr. Cassaro's opinion on appeal, the opinion of even a treating source is not entitled to controlling weight where there is substantial evidence to contradict it. See, e.g., Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 927 (6th Cir. 1987). In the present case, the plaintiff's statements about his activities indicate that he was not as limited as the treating physician suggested. In addition, the Court notes that, besides the relatively mild findings of Dr. Kidd's consultative examination, the plaintiff also underwent a physical examination in April, 2003, by Dr. George Chaney during a psychiatric hospitalization. Dr. Chaney recorded that the plaintiff reported chronic knee and back pain, which was much relieved with the morphine pump, and his physical examination showed symmetrical reflexes, no focal sensory loss, and completely normal motor testing. (Tr. 436-7). Mr. Fredricks could heel and toe walk without difficulty. (Tr. 436). In short, the combination of the plaintiff's reported daily activities

11

Fredricks

and relatively benign physical examinations provided evidence from which a reasonable fact finder could have discounted the treating physician's opinion.

Regarding the plaintiff's mental status, he was twice admitted to a psychiatric unit at the Hazard Appalachian Regional Hospital, in April and May, 2003. On the first occasion, he had been awake for several days, and was found walking the roads talking to mailboxes, beating on road signs, knocking on doors of houses, and telling people that the end was near. (Tr. 432). He was given an admission diagnosis of bipolar mood disorder and rule out schizoaffective disorder, with a Global Assessment of Functioning (GAF) score of 30. (Tr. 433). A GAF score of 30 reflects an inability to function in almost all areas, per the Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. However, he improved dramatically on medication including Zyprexa and Haldol, and his mental status at the time of discharge was within normal limits. (Tr. 433-4). His second admission occurred after he had stopped taking Zyprexa, and he again improved rapidly on this medication, Lithium and Remeron. (Tr. 443-5). His discharge diagnoses were "Bipolar I disorder with psychotic features" and "no personality disorder," with a discharge GAF score of 70. (Tr. 445). A GAF score of 70 reflects only mild symptoms. DSM-IV-TR, supra. He was to continue with Zyprexa, Lithium, Remeron, and Xanax. (Tr. 445-6). No functional restrictions are given.

12

Fredricks

The plaintiff sought treatment at a Comprehensive Care Center after his first admission, and in June, 2003 was given a diagnosis of bipolar mood disorder and "rule out" schizoaffective disorder, with a current GAF score of 65. (Tr. 479). A GAF score of 65 also represents "mild" symptoms.

The ALJ accepted the functional restrictions given by a one-time psychological examiner, Dr. James Leisenring, who interviewed Mr. Fredricks on June 25, 2003. He complained of difficulty sleeping, subjective feelings of depression, worry, and occasional crying spells (Tr. 423). He reported his recent psychiatric hospitalizations, and said that he was taking his Remeron, Xanax, and Zyprexa. (Id.). Mr. Leisenring diagnosed borderline intellectual functioning to low average intelligence, a reading disorder, a depressive disorder and an anxiety disorder, and concluded that the plaintiff would have a "seriously limited but not precluded" ability to deal with work stresses and behave in an emotionally stable manner, with all other categories being at least "limited but satisfactory." (Tr. 427-8). These were the factors accepted by the ALJ and given to the VE in the hypothetical question.

On appeal, the plaintiff argues that the ALJ committed error in not finding the plaintiff's bipolar disorder to be a "severe" impairment. However, while the plaintiff carried this diagnosis on his psychiatric hospitalizations, his condition had improved by discharge to the point that he was given GAF scores of 70 on both occasions. Regardless of his diagnosis, it is ultimately the plaintiff's burden to show specific

13

Fredricks

functional restrictions, see Webb v. Commissioner of Social Security, 368 F.3d 629, 633 (6th Cir. 2004), and it is at least arguable that the GAF scores of 70 reflected almost no significant impairment. The ALJ accepted the restrictions of the only other mental status examiner to issue an opinion, Mr. Leisenring, and there is no basis for finding greater restrictions on the evidence in the present case. Therefore, the ALJ's was hypothetical factors is supported by substantial evidence.

The decision will be affirmed.

This the __28__ day of July, 2005.

G. WIX UNTHANK
SENIOR JUDGE

14